### United States Bankruptcy Court
### District Of Colorado

FILED
BRADFORD L. BOLTON
CLERK

2012 DEC 28  PM 12: 27

U.S. BANKRUPTCY COURT
DISTRICT OF COLORADO

In re:                                          )
                                                )
EDWARD NEIBAUER SR.                             )
aka NEIBAUER ED, dba ROCKY MOUNTAIN             )    Case No.  12-30084-HRT
LIBRARY, LLC, dba WESTERN AMERICAN              )
RESOURCES,  LLC, dba P&M RIG COMPANY,           )
LLC, dba BAUER PIPELINE COMPANY, LLC            )
dba P&M PETROLEUM MANAGEMENT, LLC               )
dba BAUER OIL AND GAS, LLC, dba HIGH            )
DESERT REFINING, LLC, dba RMOC                  )    Chapter 11
HOLDINGS, LLC, dba EXECUTIVE                    )
PETROLEUM SERVICES, LLC,                        )
                                                )
            Debtors                             )
                                                )
_____     )
                                                )
HUNTINGTON RESOURCES, INC.,                      )
                                                )
            Plaintiff,                           )    Judge: HRT
                                                )
EDWARD NEIBAUER SR.                             )
aka NEIBAUER ED, dba ROCKY MOUNTAIN             )
LIBRARY, LLC, dba WESTERN AMERICAN              )
RESOURCES,  LLC, dba P&M RIG COMPANY,           )
LLC, dba BAUER PIPELINE COMPANY, LLC            )
dba P&M PETROLEUM MANAGEMENT, LLC               )
dba BAUER OIL AND GAS, LLC, dba HIGH            )
DESERT REFINING, LLC, dba RMOC                  )
HOLDINGS, LLC, dba EXECUTIVE                    )
PETROLEUM SERVICES, LLC,                        )
                                                )
            Defendants.                          )

Adversary Proceeding No.

**12-1803 HRT**

## COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF
## DEBT PURSUANTTO SECTION 523 OF THE BANKRUPTCY CODE

Plaintiff, Huntington Resources, Inc. ("Huntington Resources"), by and through its attorneys Mallgren & Ferrell, P.C., states and alleges as a Complaint against Defendants as follows:

## JURISDICTION

1.       On September 27, 2012, the Debtors filed a voluntary petition (the "Petition") for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado.

2.       As of the filing of this Complaint, the Debtors have not been granted a discharge of the debt sought to be determined non-dischargeable.

3.       This Complaint is timely because the date by which a Complaint objecting to the Debtor's discharge or to determine dischargeability of a debt expires on December 31, 2012.

4.       This is an adversary proceeding in which the Plaintiff seeks a determination as to the dischargeability of the debt owed by the Debtor to Plaintiff under Bankruptcy Code §§ 523(a)(2)(A) and 523(a)(4).

5.       The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and Bankruptcy Code § 523.

6.       This case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## PARTIES

7.       Plaintiff, Huntington Resources is a corporation organized and incorporated under the laws of the State of California and maintains its principal office as 8071 Slater Avenue, Suite 205, Huntington Beach, California 92647.

8.       Huntington Resources is a creditor of the Debtors.

9.      Upon information and belief, Defendant Edward Neibauer Sr., aka Neibauer Ed ("Neibauer") is a resident of Colorado, residing at 6244 S. Boston Court, Englewood, Colorado 80111.

10.     Upon information and belief, Defendants Rocky Mountain Library, LLC, dba Western American Resources, LLC, dba P&M Rig Company, LLC, dba Bauer Pipeline Company, LLC, dba P&M Petroleum Management, LLC, dba Bauer Oil and Gas, LLC, dba High Desert Refining, LLC, dba RMOC Holdings, LLC, dba Executive Petroleum Services, LLC (collectively, the "Neibauer Entities") are owned and/or operated by Defendant Neibauer.

11.     This Complaint alleges wrongful actions on the part of Neibauer, personally, and through the Neibauer Entities (collectively, the "Defendants").

12.     Defendants are the Debtors in Bankruptcy Court Case Number 12-30084-HRT.

## BACKGROUND

### LaBarge Transaction

### Fraudulent Participation Agreement

13.     On November 27, 2010, Huntington Resources entered into a participation agreement regarding the LaBarge Field (the "LaBarge Participation Agreement") with Bauer Oil & Gas, LLC ("Bauer Oil") for purchase of "certain oil and gas leases and wells . . . in the LaBarge Field located in Sweetwater, Sublette and Lincoln Counties, Wyoming" (the "LaBarge Wells") (*See* LaBarge Participation Agreement).  A true and correct copy of the LaBarge Participation Agreement is attached hereto as Exhibit A.

14.     The LaBarge Participation Agreement purportedly memorialized the purchase of Huntington Resources' 20 percent working interest in the LaBarge Wells.  However, Buer Oil and Neibauer had falsely represented to Huntington Resources that Bauer Oil owned the

LaBarge Wells.  As specified in the LaBarge Participation Agreement, Bauer Oil falsely claimed

to be "the owner of certain oil and gas leases and wells."  (Exhibit A, LaBarge Participation

Agreement, First "Whereas" Clause).

15.     Neibauer assured Manu Hinduja, president of Huntington Resources ("Hinduja"),

that Bauer Oil was in the process of acquiring the LaBarge Wells.

16.     Huntington Resources had previously entered into a separate participation

agreement with Bauer Oil for the acquisition of a working interest in other oil and gas leases and

wells that subsequently fell through. After this previous transaction fell through, Huntington

Resources was promptly refunded its investment after Bauer Oil was unable to secure the rights

to the oil and gas leases and wells it had agreed to sell to Huntington Resources.

17.     Based on Neibauer's representations and previous dealings between the parties,

Huntington Resources made payment to Bauer Oil on November 24, 2010, in the amount of

$84,000.00 (the "LaBarge Funds").  The LaBarge Funds were for the express purpose of

purchasing a 20 percent working interest in the LaBarge Wells and for no other purpose.

18.     Neither Neibauer nor Bauer Oil ever acquired title to the LaBarge Wells, and

neither ever performed work to complete the wells.

### Acknowledgement of Liability

19.     After execution of the LaBarge Participation Agreement, Neibauer became

increasingly difficult to contact.  Numerous E-mails, phone calls and scheduled meetings

between the parties to this action and other investors were either ignored by Neibauer or met

with empty promises of repayment, apparently in an effort by Neibauer to buy time.

20.     Via E-mail, on May 6, 2011, Neibauer responded to a request from Hinduja for an

update on the status of the LaBarge Wells.  Neibauer admitted to Hinduja that the true owners of

the LaBarge Wells did not want to sell their interests and assured Hinduja that the LaBarge

Funds would be returned to Huntington Resources the following week.  A true and correct copy

of the May 6, 2011 E-mail is attached hereto as Exhibit B.

21.     On October 10, 2011, Neibauer admitted, via E-mail, that the LaBarge Funds

given to Bauer Oil from Huntington Resources had been misappropriated by Neibauer, Bauer

Oil, or other parties, and admitted that the LaBarge Funds specifically designated for the

LaBarge Wells purchase were no longer in Neibauer's possession, and that a return of the

LaBarge Funds could only be completed "once the money [was] deposited into [his] accounts."

A true and correct copy of the October 10, 2011 E-mail is attached hereto as Exhibit C.

22.     On October 31, 2011, Neibauer sent an E-mail to Hinduja acknowledging that the

LaBarge Funds had not been returned but that Huntington Resources would be repaid.  A true

and correct copy of the October 31, 2011 E-mail is attached hereto as Exhibit D.

**Sage Spring Transaction**

**Fraudulent Diversion of Funds**

23.     On November 21, 2010, Huntington Resources entered into a separate agreement

participation agreement with Bauer Oil for the purchase of a 2.5 percent working interest in

certain oil and gas leases located in Natrona County, Wyoming, called Sage Spring Creek  (the

"Sage Spring Participation Agreement").  A true and correct copy of the Sage Spring

Participation Agreement is attached hereto as Exhibit E.

24.     Pursuant to the Sage Spring Participation Agreement, the cost of the 2.5 percent

working interest was $3,291.00.  The Sage Spring Participation Agreement also included

payment for additional costs to the working interest owners prior to the well ("Sage Spring

Well") becoming operational.  (*See* Exhibit E, Sage Spring Participation Agreement,

Memorandum Dated November 21, 2010). An invoice with the memorandum documented Huntington Resources' 2.5 percent share of dry hole costs of $24,958.00 and well completion costs of $10,237.00. (*See* Exhibit E, Sage Spring Participation Agreement, Invoice Dated November 21, 2010).

25.     Huntington Resources made payment to Bauer Oil on November 21, 2010, in the amount of $38,486.00 (the "Sage Spring Funds") for the combined cost of the working interest, dry hole costs and completion costs. The Sage Spring Funds were for the express purpose of purchasing the 2.5 percent working interest in the Sage Spring Well and for Huntington Resources' 2.5 percent share of the dry hole costs and well completion costs.

26.     The Sage Spring Well was not completed even after receipt by Bauer Oil of the Sage Spring Funds, and upon information and belief, the Sage Spring Funds were not used for the Sage Spring Well.

27.     On August 22, 2011, Neibauer sent an E-mail to Hinduja and other Sage Spring investors regarding the operation of the Sage Spring Well. In the E-mail, Neibauer stated that any funds being raised were being used "for payment of bills on the well on [Neibauer's] 62.5% interest." A true and correct copy of the August 22, 2011 E-mail is attached hereto as Exhibit F.

28.     On September 21, 2012, Neibauer sent another E-mail to Hinduja and other Sage Spring investors, this time informing the investors that a certain creditor had perfected its lien against the Sage Spring Well. A true and correct copy of the September 21, 2012 E-mail is attached hereto as Exhibit G.

## Bankruptcy

29.     On September 27, 2012, Neibauer personally, and on behalf of the Neibauer Entities, filed Chapter 11 bankruptcy.

30.     Debtors failed to list Huntington Resources as a creditor in the bankruptcy filing, even though the outstanding debts the Neibauer Entities owe to Huntington Resources of no less than $84,000.00 plus interest, for the LaBarge Transaction; and $38,486.00, plus interest, plus the cost of removing the liens on the Sage Spring Well, makes Huntington Resources one of the Defendants' 20 largest unsecured creditors.

## COUNT ONE
### LaBarge Transaction
### Non-Dischargeability Of Debt Under Section 523(a)(2)(A)

31.     The allegations of paragraphs 1 through 30 are incorporated herein by reference.

32.      Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt-

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

33.     Huntington Resources was induced into signing the LaBarge Participation Agreement and sent a check for $84,000.00 to Bauer Oil as a result of the Defendants' false claim of ownership and attempted acquisition of the LaBarge Wells.

34.     None of the Defendants actually owned nor acquired the LaBarge Wells as originally represented, and as later admitted by Neibauer in the E-mail dated May 6, 2011,

attached hereto as Exhibit B.  Defendants' representation to Huntington Resources that it owned the LaBarge Wells was false.

35.     Defendants' claims of ownership and/or acquisition were apparently intended to induce Huntington Resources into entering into the LaBarge Participation Agreement and sending the LaBarge Funds to Bauer Oil and the Defendants.

36.     Huntington Resources was induced to enter into the LaBarge Participation Agreement and sent funds to Bauer Oil on the reasonable belief that Neibauer and/or one or more of the Neibauer Entities held title to, or would otherwise obtain title to, the LaBarge Wells, and that the funds provided were solely for the purpose of purchasing the LaBarge Wells, and would not be used for any other purpose.

37.     Huntington Resources reasonably relied on these representations to its detriment, and has suffered injury and damages as a result of such reliance because it has neither received a working interest in the LaBarge Wells, nor has it received the LaBarge Funds from the Defendants.

38.     The debt owed to Huntington Resources is non-dischargeable as it is a debt for money, property or services that was obtained by false pretenses, a false representation or actual fraud within the meaning of Bankruptcy Code § 523(a)(2)(A).

### COUNT TWO
#### LaBarge Transaction
#### Non-Dischargeability Of Debt Under Section 523(a)(4)

39.     The allegations of paragraphs 1 through 38 are incorporated herein by reference.

40.     Bankruptcy Code § 523(a)(4) provides, in relevant part, that:

(a)  A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt-

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or

larceny . . . .

41.    Under the LaBarge Participation Agreement, Huntington Resources entrusted the

Defendants with $84,000.00.

42.    Defendants misappropriated and embezzled the LaBarge Funds delivered by

Huntington Resources.  The LaBarge Funds were delivered to the Defendants for the sole

purpose of purchasing a working interest in the LaBarge Wells, for which the Defendants

claimed ownership, but clearly did not own and did not acquire.

43.    Defendants intended to defraud Plaintiff of the LaBarge Funds as indicated by

Neibauer's decision to spend the LaBarge Funds on matters for which the funds were not

intended, and which were unrelated to the purchase of the LaBarge Wells working interest.

44.    Huntington Resources reasonably relied on the representations of Defendants that

the LeBarge Funds would only be used for the purchase of the LaBarge Wells working interests.

Furthermore, Defendants knew that the LaBarge Funds were to be returned after the LaBarge

Wells could not be obtained as evidenced by Bauer Oil's prompt return of Huntington

Resources' investment in prior business dealings between the parties.

45.    The debt owed to Huntington Resources is non-dischargeable as it is a debt for

money, property or services that was obtained by fraud or defalcation while acting in a fiduciary

capacity, embezzlement or larceny within the meaning of Bankruptcy Code § 523(a)(4).


**COUNT THREE**

**Sage Spring Transaction**

**Non-Dischargeability Of Debt Under Section 523(a)(2)(A)**

46.     The allegations of paragraphs 1 through 45 are incorporated herein by reference.

47.     Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

(b) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this

title does not discharge an individual debtor from any debt-

(2)  for money, property, services, or an extension, renewal, or refinancing of

credit, to the extent obtained by-

(A)  false pretenses, a false representation, or actual fraud, other than a statement

respecting the debtor's or an insider's financial condition . . . .

48.     Huntington Resources was induced into signing the Sage Spring Participation

Agreement and sent a check for $38,486.00 to Bauer Oil as a result of the Defendants' false

claim that the proceeds would be used for the limited purpose of purchasing the working interest

and for the dry hole costs and completion of the Sage Spring Well.

49.     The Defendants did not use the funds for dry hole costs and well completion as

promised in the Sage Spring Participation Agreement, and as later admitted by Neibauer in the

E-mail dated August 22, 2011, attached hereto as Exhibit E. Neibauer was using capital to pay

off bills on his own interest in the Sage Spring Well.

50.     Defendants' claims that the Sage Spring Funds would be used for dry hole costs

and completion of the Sage Spring Well were intended to induce Huntington Resources into

entering into the Sage Spring Participation Agreement and sending the Sage Spring Funds to

Bauer Oil and the Defendants.

51.     Huntington Resources was induced to enter into the Sage Spring Participation

Agreement and sent funds to Bauer Oil on the reasonable belief that Neibauer and/or one or more

of the Neibauer Entities would spend the Sage Spring Funds only on the Sage Spring Well, that Defendants would promptly complete the Sage Spring Well, and otherwise spend the Sage Spring Funds as specified in the various agreements, memoranda and invoices.

52.    Huntington Resources has suffered injury and damages as a result of the misappropriation and diversion of Sage Spring Funds that were not used for dry hole costs and completion of the Sage Spring Well;  nor has Huntington Resources received the Sage Spring Funds from the Defendants.

53.    The debt owed to Huntington Resources is non-dischargeable as it is a debt for money, property or services that was obtained by false pretenses, a false representation or actual fraud within the meaning of Bankruptcy Code § 523(a)(2)(A).

## COUNT FOUR
### Sage Spring Transaction
### Non-Dischargeability Of Debt Under Section 523(a)(4)

54.    The allegations of paragraphs 1 through 53 are incorporated herein by reference.

55.    Bankruptcy Code § 523(a)(4) provides, in relevant part, that:

(b) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt-

(4)  for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .

56.    Under the Sage Spring Participation Agreement, Huntington Resources entrusted the Defendants with $38,486.00.

57.    Defendants misappropriated and embezzled the Sage Spring Funds delivered by Huntington Resources.  The Sage Spring Funds were delivered to the Defendants for the sole

purpose of purchasing a working interest in the Sage Spring Well, and for dry hole costs and well completion. The Defendants never used the Sage Spring Funds for dry hole costs and well completion for the Sage Spring Well.

58.     Defendants intended to defraud Plaintiff of the Sage Spring Funds as indicated by Neibauer's decision to divert capital funds for his personal use and not for the purpose intended.

59.     Huntington Resources reasonably relied on the representations of Defendants that the Sage Spring Funds would only be used for the purchase of the Sage Spring working interests, and for well completion and dry hole costs.

60.     The debt owed to Huntington Resources is non-dischargeable as it is a debt for money, property or services that was obtained by fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny within the meaning of Bankruptcy Code § 523(a)(4).

WHEREFORE, Plaintiff Huntington Resources, Inc. respectfully requests that this Court enter a Judgment in favor of Huntington Resources, Inc. and against Defendants:

LaBarge Transacation:

1.     Determining that the debt owed to the Huntington Resources, Inc. in the amount of $84,000.00 plus interest under the LaBarge Participation Agreement is non-dischargeable under Bankruptcy Code §§ 523(a)(2)(A) and 523(a)(4);

Sage Spring Transaction:

2.     Determining that the debt owed to the Huntington Resources, Inc. in the amount of $38,486.00 plus interest, plus the costs of removing all liens under the Sage Spring Wells is non-dischargeable under Bankruptcy Code §§ 523(a)(2)(A) and 523(a)(4); and

3.     For such further and other relief as this Court may deem just and proper.

Plaintiff Huntington Resources, Inc. respectfully requests that this Court enter a

Judgment in favor of Huntington Resources, Inc. and against Defendants in the Sage Spring

Transaction:

Dated:  December 28, 2012.

MALLGREN & FERRELL, P.C.

By:      /s/ R. Garth Ferrell
         R. Garth Ferrell
         8480 E. Orchard Road, Suite 6500
         Greenwood Village, CO 80111
         (303) 692-0700
         (303) 692-0701 (fax)
         gferrell@mallgrenferrell.com

# PARTICIPATION AGREEMENT

**THIS AGREEMENT,** made and entered into by and between Bauer Oil & Gas, LLC ("Bauer"), party of the First Part, and Huntington Resources, Inc., Party of the Second Part.

**WHEREAS,** Party of the First Part is the owner of certain oil and gas leases and wells and desires to sell Working Interest ownership in various wells and leases in the LaBarge Field located in Sweetwater, Sublette and Lincoln Counties, Wyoming and more fully described in Exhibit "A" hereto attached.

**WHEREAS,** Party of the Second Part desires to acquire a Working Interest in said oil and gas leases and wells in accord and subject to limitations and requirements imposed by proper authorities or contracts thereof, the Parties hereto agree as follows:

(1) For and in consideration of the sum of **EIGHTY FOUR THOUSAND DOLLARS ($84,000)** in hand paid by the Party of the Second Part, the receipt whereof is hereby acknowledged by the Party of the First Part, the Party of the First Part agrees to convey to the Party of the Second Part, an undivided 20.0% Working Interest in the available leasehold interests and wells and more fully described in Exhibit "A". It is expressly understood that the interest conveyed by the Party of the First Part shall be subject to all the terms and conditions of the existing oil and gas lease. The above named Working Interest is subject to and burdened by its proportionate share of the existing Royalty and Overriding Royalty Interests, proportionately reduced.

(2) Party of the First Part agrees to commence the necessary work and completion operations for production of the wells as weather permits and to do those things that a prudent oil and gas operator would do until such time as the oil and gas in commercial quantities may no longer be produced from the property.

(3) Party of the Second Part agrees to pay his proportionate share of the costs of operation, workover costs and administration of said wells and marketing of the oil and gas produced therefrom.

(4) The Parties hereto agree that the working interest owners shall pay their proportionate share of all bonds required by state and federal regulatory authorities.

(5) All Parties agree to sign a standard form AAPL Operating Agreement. Bauer Oil & Gas, LLC shall become the Operator of the wells and shall operate according to the terms and conditions of the Operating Agreement.

(6) This Agreement shall be binding on all heirs, assignors and successors in interest.

```
EXHIBIT
tabbies
A
```

AGREED TO AND ACCEPTED THIS ___27TH___ DAY OF _November_, 2010

**PARTY OF THE FIRST PART:**

**BAUER OIL & GAS, LLC**

BY: _____
    **Edward Neibauer, Managing Member**

**PARTY OF THE SECOND PART:**

NAME: ___HUNTINGTON RESOURCES, INC.___
        **(Please print or type)**

BY: _____  MANU HINDUJA, President

ADDRESS: ___8071 SLATER AVE, SUITE 205___

___HUNTINGTON BEACH, CA 92647___

_____

_____

FEDERAL TAX I.D. NUMBER: ___33 - 0545138___

# EXHIBIT "A"

## DESCRIPTION OF WELLS

| Well | Lease Number | Location | WI/NRI (%) |
|------|--------------|----------|------------|
| Stead Canyon 11-23 | WYW055275 | NWNW Section 23, T26N, R112W | 100/87.5 |
| Stead Canyon 8-2 | WYE22932 | NWSE Section 2, T26N, R112W | 100/87.5 |
| Stead Canyon 12-2 | WYE22933 | SWNE Section 2, T26N, R112W | 100/87.5 |
| Blue Forest 30-2 | WYW33085 | CSW Section 2, T24N, R110W | 94.94/75.42 |
| Blue Forest 30-31 | WYW38879 | SWSW Section 31, T25N, R109W | 94.95/73.43 |
| Bird Canyon 30-12 | WYW36421 | SESW Section 12, T26N, R111W | 86.79/68.46 |
| Heron State 10-16 | WY7228069 | NENW Section 16, T27N, R111W | 69.42/55.01 |
| Veal Federal 10-20 | WYW54466 | SWNW Section 20, T28N, R111W | 87.02/67.52 |
| Bird Canyon 10-5 | WYW51347 | CNW Section 5, T27N, R111W | 98.83/84.74 |
| Lodgepole 10-1 | WYW0325685 | SWNW Section 1, T24N, R110W | 62.65/51.21 |
| Bird Canyon 10-9 | WYW42781 | S2NW Section 9, T27N, R111W | 99.46/75.65 |
| Esposito 40-32 | WYW77883 | NWSE Section 32, T28N, R111W | 99.45/79.39 |
| Red Gap 2-20 | | NESE Section 20, T26N, R113W | 92.50/72.40 |
| Haun Federal 40-8 | WYW38503 | NWSE Section 8, T26N, R111W | 97.20/70.54 |

**HUNTINGTON RESOURCES, INC.**
8071 SLATER AVE STE #205
HUNTINGTON BEACH, CA 92647

911

Date 11-24-2010

16-66/1220
984

Pay to the
Order of _Bauer Oil & Gas, LLC_ | $ 84,000 ⁰⁰

_Eighty-four Thousand_ ————— ⁰⁰/₁₀₀ Dollars

**Bank of America**
Huntington-Harbour
16811 Algonquin St.
Huntington Beach CA
714.973.8496

VALUED
Customer Since
1993

For _20% W.I. La Berge Deep_

⑈122000661⑈0911⑈09848⑈031591⑈

GUARDIAN SAFETY PLUS II %



---

## Update on the status of the investments

---

**Ed Neibauer** <eneibauer@westamresources.com>   Fri, May 6, 2011 at 5:13 AM
To: M H <manuhinduja@gmail.com>

Manu,

I will be forwarding the funds you, Anshu and Jeff advanced for the acquisition of the LaBarge project next week. The Sellers notified me that they are not willing to sell due to some reason that we are researching. I have spent monies on the title review and due diligence since the fall of last year which you will not be paying for. I still plan to pursue the transaction after we figure out what happened. I will definitely call this weekend to discuss. Thanks for your patience on this project.





Edward Neibauer, Managing Member

**P&M Petroleum Management LLC**

**Western American Resources LLC**

555 17th Street, Suite 1400

Denver, Colorado 80202

303-629-8810 (o)

303-629-4776 (fax)

303-842-5551 (m)

pmpetroleum4@msn.com

eneibauer@westamresources.com

**EXHIBIT**
tabbies
_B_



## Update on the status of the investments

**Ed Neibauer** <eneibauer@westamresources.com>
To: Manu Hinduja <manuhinduja@gmail.com>

Mon, Oct 10, 2011 at 5:59 AM

Most definitely, Manu.

Your checks will be the first ones cut once the money are deposited into my account. Thanks for working with me over the past troubling months.





Edward Neibauer, Managing Member

**P&M Petroleum Management LLC**

**Western American Resources LLC**

555 17th Street, Suite 1400

Denver, Colorado 80202

303-629-8810 (o)

303-629-4776 (fax)

303-842-5551 (m)

**pmpetroleum4@msn.com**

**eneibauer@westamresources.com**

**From:** Manu Hinduja [mailto:manuhinduja@gmail.com]

EXHIBIT

C



## Update on the status of the investments

**Ed Neibauer** <eneibauer@westamresources.com>                    Mon, Oct 31, 2011 at 10:50 AM
To: Manu Hinduja <manuhinduja@gmail.com>

Manu,

You will be the first in line for the funds.  I was speaking in general terms on the Sage Spring 7 well as I will have enough funds to do both.



EXHIBIT

webber

# PARTICIPATION AGREEMENT

**THIS AGREEMENT,** made and entered into by and between Bauer Oil & Gas, LLC, party of the First Part, and Huntington Resources, Inc., Party of the Second Part.

**WHEREAS,** Party of the First Part is the owner of certain oil and gas leases and desires to sell Working Interest ownership in the leases located in Natrona County, Wyoming.

**WHEREAS,** Party of the Second Part desires to acquire a Working Interest in said leases in accord and subject to limitations and requirements imposed by proper authorities or contracts thereof, the Parties hereto agree as follows:

(1) For and in consideration of the sum of THREE THOUSAND TWO HUNDRED NINETY ONE DOLLARS ($3,291) in hand paid by the Party of the Second Part, the receipt whereof is hereby acknowledged by the Party of the First Part, the Party of the First Part agrees to convey to the Party of the Second Part, an undivided **Two and One Half Percent (2.5%) Working Interest** in 1,515.63 acres located in Natrona County, Wyoming. It is expressly understood that the interest conveyed by the Party of the First Part shall be subject to all the terms and conditions of the existing oil and gas lease. The above named Working Interest is subject to and burdened by its proportionate share of the landowner(s), State and/or Federal Mineral Royalty and Overriding Royalty Interest, proportionately reduced.

(2) Party of the Second Part agrees to participate on a "one-third for a one-quarter basis promote" in the drilling and completion of the Sage Spring Federal #7-1 well located in the NENW Section 7, T36N, R77W, Natrona County, Wyoming or a similar replacement well to test the Dakota formation during the stipulated drilling period which begins July 1, 2010 and ends on November 30, 2010. The Sage Spring Federal #7-1 well was drilled on November 14, 2010.

(3) Party of the Second Part agrees to participate on a "one-third for a one-quarter basis promote" in the re-entry of the Prenalta #31-7 well located in NWNE Section 7, T36N, R77W to convert the well to a salt water disposal (SWD) well.

(4) Party of the First Part agrees to commence the necessary drilling and completion operations for the Sage Spring Federal #7-1 well as weather and equipment availability permit and to do those things that a prudent oil and gas operator would do until such time as the oil and gas in commercial quantities may no longer be produced from the well.

(5) Party of the Second Part agrees to pay his proportionate share of the costs of operation and administration of said wells and marketing of the oil and gas produced therefrom.



EXHIBIT

tabbies

E

(6) The Parties hereto agree that the working interest owners shall pay their proportionate share of all bonds required by state and federal regulatory authorities.

(7) All Parties agree to sign an A.A.P.L. Form 610-1989 Model Form Operating Agreement. P&M Petroleum Management LLC shall become the Operator of the wells and shall operate according to the terms and conditions of the Operating Agreement.

(6) This Agreement shall be binding on all heirs, assignors and successors in interest.

**AGREED TO AND ACCEPTED THIS** _21ˢᵗ_ **DAY OF** _NOVEMBER_ **, 2010.**

**PARTY OF THE FIRST PART:**

**BAUER OIL & GAS, LLC**

BY: _____

Edward Neibauer, Managing Member

**PARTY OF THE SECOND PART:**

NAME: _Huntington Resources, Inc._

**(Please print or type)**

BY: _____   MANU HINDUJA, President

ADDRESS: _8071 Slater Ave, Suite 205_

_Huntington Beach, CA 92647_

_____

**FEDERAL TAX I.D. NUMBER:** _33-0545138_

# MEMORANDUM

Date:  November 21, 2010

To:  Sage Spring Creek #7-1 Well Working Interest Owners

From:  Edward Neibauer, Bauer Oil & Gas, LLC

Subject:  Drilling and Completion Costs

The Sage Spring Creek #7-1 Well was drilled on November 14, 2010.  The dry hole AFE costs were estimated at $748,750 and we the actual costs are around $950,000.  I am still awaiting several discounted items including the rig move which was around $200,000.  This cost and the trouble we had with the hole conditions after we hit total depth resulted in the cost over-runs.  I will have final drilling costs within the next week.

The completion rig has moved on the well and we will be completing the well next week.  The estimated completion costs are $307,000 and I am hoping to come in under those figures to make up for the drilling cost over-runs.  We will forward a complete well cost report once the well has been completed and in production.

I have attached your invoice for the completion costs and would appreciate receiving those monies promptly.  Please forward to the Bauer account (see wiring instructions).

I am looking forward to bringing in a very good well and we have several more to drill on our acreage position in the Sage Spring Field.

**Bauer Oil & Gas LLC**
**555 17th Street, Suite 1400**
**Denver, Colorado 80202**

November 21, 2010

Mr. Manu Hinduja
Huntington Resources, Inc.
8071 Slater Avenue, Suite 205
Huntington Beach, California 92647

# INVOICE

Drilling and Completion of the Sage Spring Federal #7-1 Well, Acreage and Prospect Fee

| | |
|---|---|
| Acreage & Prospect Fee (2.5% WI) | $ 3,291 |
| Estimated Dry Hole Cost #7-1 Well (2.5% WI) | $24,958 |
| Estimated Completion Cost #7-1 Well (2.5% WI) | $10,237 |

**Total Amount.....................** $38,486

---

HUNTINGTON RESOURCES, INC.
8071 SLATER AVE STE #205
HUNTINGTON BEACH, CA 92647

910

Date 11-21-2010

16-66/1220
984

Pay to the Order of _Bauer Oil & Gas, LLC_ $ 38,486

_Thirty eight Thousand four hundred eighty six_ Dollars

Bank of America
Huntington-Harbour
16811 Algonquin St.
Huntington Beach CA
714.973.8495

Customer Since 1993

For _2.5% WI Sage Spring Fed 7-1_
_New Acreage, Prospect & Completion_

⑈122000664⑈ 0910 09848 03154⑈

GUARDIAN. SAFETY BLUE TSBL

# MEMORANDUM

## The wiring instructions for:

Bauer Oil & Gas LLC
555 17th Street, Suite 1400
Denver, Colorado 80202
303-629-8810

## Are as follows:

Wells Fargo Bank, N.A.
1700 Broadway
Denver, Colorado 80202

**Routing Number:  102000076**
**Account Number:  2297036093**

## Banker

Peter J Martin
Wells Fargo Bank
143 Union Blvd, Ste 500
Lakewood, CO  80228
Phone:  303-863-5695
Email:  peter.j.martin@wellsfargo.com

**Bauer Oil & Gas LLC**
**555 17th Street, Suite 1400**
**Denver, Colorado 80202**

November 21, 2010

Mr. Manu Hinduja
Huntington Resources, Inc.
8071 Slater Avenue, Suite 205
Huntington Beach, California 92647

# INVOICE

Drilling and Completion of the Sage Spring Federal #7-1 Well, Acreage and
Prospect Fee

| | |
|---|---|
| Acreage & Prospect Fee (2.5% WI) | $ 3,291 |
| Estimated Dry Hole Cost #7-1 Well (2.5% WI) | $24,958 |
| Estimated Completion Cost #7-1 Well (2.5% WI) | $10,237 |
| **Total Amount......................** | **$38,486** |

Due Upon Receipt

EXHIBIT

F

On Mon, Aug 22, 2011 at 10:53 AM, Ed Neibauer <pmpetroleum4@msn.com> wrote:

Dear Edward,

I am insulted for you to refer to my efforts in raising capital either through selling of assets or financing them as a "ponzi scheme". You and all the working interest owners have been assigned your interest and I even had a title opinion rendered to assure all of the interest…and they have

been recorded. I am now raising new capital to pay off your investment but using the funds for payment of bills on the well on MY 62.5% interest and getting the well back into production which will generate the revenues to pay off your investment. Any future reference to my efforts being a "ponzi scheme" will be forwarded to my attorney and you can deal directly with him. I have been upfront with you on my financing situation from day one and it is no fault of mine that others that have expressed interest and/or even signed a PSA but have not performed. I will not just give my assets away to satisfy your concerns. Keep in mind I have 62.5% working interest in the well and you have 2.5% and I am working on this for all the working interest owners concern and investment in the project.

Per your request, in 2 weeks the Sage Spring Creek well will be back into production awaiting a frac job and a workout plan "in-place" with the vendors.





Edward Neibauer, Managing Member

**P&M Petroleum Management LLC**

**Western American Resources LLC**

555 17th Street, Suite 1400

Denver, Colorado 80202

303-629-8810 (o)

303-629-4776 (fax)

303-842-5551 (m)

pmpetroleum4@msn.com

eneibauer@westamresources.com



## UTI-Patterson Lien

**Edward Neibauer** <pmpetroleum4@msn.com>

Fri, Sep 21, 2012 at 4:14 AM

To: Ed Wambsganss <ed@wambsg.com>, EC Brookover <ecb@brookover.com>, Dan Connell <dan@danconnellpc.com>, Shirley Endresen <shirleyinlaguna@gmail.com>, Noam Ashter <noam.ashter@gmail.com>, Edward Krasnov <krasnove@gmail.com>, Manu Hinduja <manuhinduja@gmail.com>

Working Interest Owners,
UTI-Patterson, the drilling contractor on the Sage Spring 7-1 well, has perfected their lien for monies owed them by P&M Petroleum Management, LLC as Operator of the well.  You will be receiving the paperwork soon as working interest owners of the well.  As I have told you, I am in constant contact with them and will enter into a payment plan by the end of this month which will pay off the debt over a six (6) period.  I have been diligently working on re-financing my assets and feel confident that the closing will finally happen next week.  I have had an excellent relationship with UTI-Patterson over the years and will re-establish the credit worthiness I had in the past with them.  I will let you all know shortly.

The well is currently shut-in awaiting a pump change and once the financing has been secured I intend to finally frac the well.

Edward Neibauer, Managing Member
Executive Petroleum Services, LLC
P&M Petroleum Management, LLC
High Desert Refining, LLC

303-842-5551 (m)
email:  pmpetroleum4@msn.com

EXHIBIT
G

B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only)<br>12-1803 HRT |
|---|---|
| **PLAINTIFFS**<br>Huntington Resources, Inc. | **DEFENDANTS**<br>Edward Neibauer, Sr. et al.  (See attached list) |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Mallgren & Ferrell, P.C.<br>R. Garth Ferrell<br>8480 E. Orchard Road, Suite 6500<br>Greenwood Village, CO 80111<br>303-692-0700 | **ATTORNEYS** (If Known)<br>Mark E. Macy<br>Macy Law Office, P.C.<br>217 West 18th Street<br>Cheyenne, WY 82001 |
| **PARTY** (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor       ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor       ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Objection to Discharge under 28 U.S.C. §§ 523(a)(2) and 523 (a)(4)

---

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that should have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  Denial of Discharge for debts accruing in certain |
| Other Relief Sought<br>   None | transactions |

U.S. BANKRUPTCY COURT
DISTRICT OF COLORADO
2012 DEC 28 PM 12: 27
BRADFORD L. BOLTON
CLERK

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Edward Neibauer, Sr. | BANKRUPTCY CASE NO.<br>12-30084-HRT | |
| DISTRICT IN WHICH CASE IS PENDING<br>Colorado | DIVISION OFFICE | NAME OF JUDGE<br>Howard R Tallman |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br>December 28, 2012 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>R. Garth Ferrell | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**Attachment to Adversary Proceeding Cover Sheet**

*Debtor/Defendant*

Edward Neibauer, Sr.
*dba* P&M Rig Company, LLC
*aka* Neibauer Ed
*dba* Rocky Moutain Library, LLC
*dba* Western American Resources, LLC
*dba* Bauer Pipeline Company, LLC
*dba* Bauer Oil and Gas, LLC
*dba* High Desert Refining, LLC
*dba* RMOC Holdings, LLC
*dba* Executive Petroleum Services, LLC
*dba* P&M Petroleum Management, LLC